## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Sharon Mitchell,

        Plaintiff,

        v.

City of Elgin, *et al.*,

        Defendants.

Case No. 14 CV 3457

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Pro se Plaintiff Sharon Mitchell, a former student at Elgin Community College ("ECC"), brings this action in response to several incidents that occurred during her time at ECC. The Defendants are ECC, Professor Ana Lalley, the City of Elgin, three Elgin police officers (Todd Ramljak, Kevin Senne, and Sergeant Danner), and the ECC's compliance officer Marilyn Prentice. In her First Amended Complaint ("FAC"), Plaintiff brings the following claims against all Defendants: (1) Fourth Amendment false arrest under 42 U.S.C. § 1983; (2) false light invasion of privacy; (3) defamation; (4) intentional infliction of emotional distress; (5) state law false arrest; (6) malicious prosecution; (7) respondeat superior; (8) deprivation of free speech under the First Amendment; (9) indemnification; (10) obstruction of justice; (11) deprivation of equal protection under 42 U.S.C. § 1983; and (12) deprivation of due process under 42 U.S.C. § 1983. The Defendants moved to dismiss the FAC in two separate motions that raised many of the same arguments.

*See* [51], [70].  For the reasons explained below, those motions are granted in part and denied in part.

## I.    Background[1]

In the fall of 2010, Plaintiff was enrolled in Defendant Lalley's Criminal Justice course at ECC.  FAC at ¶ 13.  Defendant Lalley was both a Professor at ECC and a police officer with the City of Elgin.  *Id*. at ¶¶ 7.  As part of the Criminal Justice course, Plaintiff was required to respond to discussion topics via an online forum called "D2L."  *Id*. at ¶ 14.  This included topics related to the students' feelings towards law enforcement.  *Id*.  Plaintiff alleges that Lalley disliked Plaintiff's comments and began a "campaign" against her.  *Id*.  Lalley contacted Plaintiff, requesting that she refrain from vocalizing her opposition in the discussions.  *Id*. at ¶ 15.  Lalley then began removing Plaintiff's posts while informing Plaintiff that her posts and emails to Lalley were aggressive, unprofessional, and confrontational; and that they may have been in violation of ECC's policies on student behavior.  *Id*. at ¶¶ 15-16.  Lalley warned Plaintiff that any more confrontational messages to Lalley, or to Plaintiff's classmates, would result in removal from the course.  *Id*.  Shortly thereafter, Lalley asked to meet with Plaintiff.  *Id*. at ¶ 17.  Plaintiff declined, saying that she was unavailable due to her schedule, and also that she could not talk by phone because she did not have one. *Id*. at ¶ 17.  According to Plaintiff, these disputes marked the beginning of Lalley's vindictive and relentless campaign against her.  *Id*. at ¶ 14.  Despite this

---

[1] The Background Section is based upon the well-pleaded factual allegations of the First Amended Complaint.  [49].  The facts are accepted as true solely for the purpose of this motion.

deteriorating relationship, Plaintiff successfully completed Lalley's course with an "A" grade and enrolled in the Spring 2011 Juvenile Justice course, also taught by Lalley. *Id.* at ¶ 19.

While enrolled in the Juvenile Justice course, Plaintiff had another disagreement with Lalley. *Id.* at ¶¶ 21-25. On January 27, 2011, Lalley returned a homework assignment to the Plaintiff with the request that Plaintiff cite the sources she used, although that was not a requirement of the assignment and no other students were required to cite sources. *Id.* at ¶ 21. Plaintiff responded by telling Lalley that she would address those concerns with Scott Adams, the Criminal Justice Program Coordinator at ECC. *Id.* at ¶ 22. Plaintiff contacted Adams and told him that she feared retaliation due to opposition to her posts on D2L. *Id.* at ¶ 22. She told Adams that if Lalley continued to intimidate and harass her, she would file an official complaint with the college. *Id.*

Three days later, Lalley sent Plaintiff an email informing her that she was in violation of ECC's plagiarism policy and, as a result, would fail the course and no longer have access to D2L. *Id.* at ¶ 23. Plaintiff, upon advice from Dr. Cowles, the Dean of Student Services and Developmental Disability, appealed the decision and filed a harassment and discrimination complaint against Lalley. *Id.* at ¶¶ 24-25. Plaintiff received a response from Defendant Prentice acknowledging that Prentice had received Plaintiff's complaint. *Id.* During the adjudication of Plaintiff's appeal and complaint, Dr. Cowles told Plaintiff that she was still officially enrolled in Lalley's class and had to continue meeting course requirements – including class

discussions on D2L and the completion of homework assignments. *Id*. at ¶ 26. Despite this, Lalley continued to send Plaintiff private messages telling her to stop commenting on D2L, as she was no longer enrolled in the class. *Id*. Lalley subsequently disabled Plaintiff's ability to comment on D2L and refused to grade her homework assignments. *Id*.

During the spring of 2011, several of the Defendants began investigating Plaintiff's personal information, including enrollment records, class schedules and course work. *Id*. at ¶ 27. This eventually led to Defendants Lalley and Ramljak appearing in one of Plaintiff's family law classes and asking the professor to identify her. *Id*. Defendant Ramljak was a police officer with the City of Elgin, and also a professor at ECC. *Id*. at ¶¶ 10-11. On May 7, 2011, Defendant Ramljak – allegedly in his capacity as a professor at ECC – wrote a General Incident Report alleging disorderly conduct in connection with an interoffice envelop left in his ECC mailbox. *Id*. at ¶ 29. He identified Lalley as the victim but wrote that the suspect was unknown. *Id*. Defendant Danner approved the May 7, 2011 report. *Id*. On May 25, 2011, Defendant Senne wrote a Supplemental Report alleging electronic communication harassment by Plaintiff. *Id*. at ¶ 30. The report stated that Lalley had received a harassing email to her ECC account from chernoffjosh@aol.com. *Id*. at ¶ 30. Lalley told Senne that Plaintiff was the only suspect, and Defendant Danner approved the supplemental report. *Id*.

From the time Plaintiff filed the ECC complaint through July 2011, she sought updates on the status of her complaint from Defendant Prentice, who was

responsible for investigating the complaint. *Id.* at ¶¶ 31-33. In response, Prentice told Plaintiff she was still investigating. *Id.* On October 4, 2011, after Plaintiff contacted Prentice about the status of the investigation, Prentice informed Plaintiff that the investigation was complete and a letter would be mailed to Plaintiff's home address that afternoon. *Id.* at ¶ 52. Plaintiff never received that letter. *Id.* at ¶ 54.

In July 2011, Plaintiff received a business card from Elgin Police Officer Kevin Senne requesting that she contact him. *Id.* at ¶ 35. Plaintiff's neighbors also observed police officers approaching her house on multiple occasions. *Id.* at ¶¶ 34, 36. On August 10, 2011, Defendant Senne signed a criminal complaint alleging electronic communication harassment against the Plaintiff, and obtained a warrant for her arrest. *Id.* at ¶ 37. To obtain the warrant, Plaintiff alleges that Senne knowingly made or submitted false, misleading, and/or incomplete statements to the local magistrate judge. *Id.* at ¶ 57. On August 17, 2011, Plaintiff filed a motion to quash her arrest warrant with the Kane County Clerk. *Id.* at 40.

Later that day, Plaintiff was visiting Waubonsee Community College and an unknown Waubonsee police officer asked her to leave because she was not allowed on school grounds. *Id.* at 40. That officer escorted Plaintiff from the premises and, as she was driving away from campus, Plaintiff saw a Sugar Grove police car pull up behind her. *Id.* at ¶41. Plaintiff alleges that the unknown Waubonsee officer knew that Plaintiff had an outstanding arrest warrant, but allowed her to leave campus because the officer was in contact with the Sugar Grove Police Department ("SGPD"), who in turn was in contact with the EPD. *Id.* at ¶ 41.

As soon as Plaintiff left campus, a SGPD officer arrested her. *Id.* at ¶¶ 40-46. That officer handcuffed Plaintiff and left her in handcuffs for approximately 30 minutes while he arranged to place her in EPD's custody pursuant to the outstanding warrant. *Id.* at ¶¶ 44-45. Plaintiff was arrested despite showing her motion to quash the subpoena to the arresting officer, and the officer then took her to the Kane County Sheriff's Office ("KCSO"). *Id.* at ¶¶ 44, 46-47. There, Plaintiff alleges that the SGPD officer informed the KCSO intake officer that Plaintiff had an outstanding arrest warrant. *Id.* at ¶ 47. The intake officer asked for the warrant and the SGPD officer responded that, while he did not personally have it, there was a warrant outstanding. *Id.* at 48. Plaintiff claims that the intake officer stated he would not take her into custody without verifying that a warrant existed, but nonetheless took Plaintiff into custody. *Id.* It is unclear from the FAC whether the intake officer verified the existence of Plaintiff's warrant. Upon being taken into custody, Plaintiff was evaluated by a psychiatrist due to her alleged "extreme state of distress," then fingerprinted, booked, and released on bond. *Id.* at ¶¶ 50-51.

From September 1, 2011 to July 24, 2013, the State of Illinois offered Plaintiff multiple plea deals. *Id.* at 55. Plaintiff declined those offers, and instead went to trial. *Id.* The trial court resolved Plaintiff's case by issuing a directed verdict in her favor. *Id.* at ¶¶ 55-56. Plaintiff claims that her reputation in the community has been irreparably damaged due to her arrest's publication in at least one local newspaper and online. *Id.* at ¶ 59. Further, she alleges that the actions taken against her were consistent with the policy of ECC and the EPD to "retaliate

against and intimidate people who exercise their speech in a manner perceived to be in opposition to the leadership within the City of Elgin, EPD and ECC." *Id.* at ¶ 61. As a result of this policy and the Defendants' related conduct, Plaintiff alleges that she has suffered false imprisonment, loss of freedom of movement, extreme humiliation and embarrassment, anxiety, stress, emotional distress, and damage to her health. *Id.* at ¶ 68.

## II.   Legal Standard

Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the Plaintiff, accept as true all well-pleaded facts and draw reasonable inferences in her favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). To survive a motion under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Because Plaintiff proceeds *pro se*, the Court is required to construe the FAC

"liberally," holding it to a "less stringent standard than formal pleadings drafted by lawyers." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

## III. Analysis

Plaintiff brought each of her causes of action against all Defendants. [1] at ¶¶ 71-149. The Defendants, in two overlapping groups, moved to dismiss all of Plaintiff's causes of action. For purposes of this Opinion, the first group of Defendants to move for dismissal will be referred to as the "City Defendants," and includes the City of Elgin, Ana Lalley, Todd Ramljak, Kevin Senne, and Sgt. Danner. The City Defendants were all listed in Plaintiff's original complaint [1], and filed their motion to dismiss on May 12, 2015. [51]. The second group of Defendants will be referred to as the "ECC Defendants," and includes ECC, Marilyn Prentice, Ana Lalley, and Todd Ramljak. On April 28, 2015, Plaintiff added ECC and Marilyn Prentice to this lawsuit by listing them in her First Amended Complaint. [49]. The ECC Defendants then filed their motion to dismiss on August 19, 2015. [70]. To the extent the overlap between the two groups becomes material, the court will specifically list the Defendant(s) it is addressing.

### a. Counts I and V

Count I alleges false arrest under a Fourth Amendment theory, and Count V alleges state law false arrest. Both claims are time barred. First, with regard to Plaintiff's Fourth Amendment false arrest claim in Count I, the applicable statute of limitations is two years. *Williams v. City of Chicago*, No. 11 C 1105, 2014 WL 3787422, at *3 (N.D. Ill. July 30, 2014). A claim for false arrest accrues on the date

of plaintiff's arrest, and the limitations period runs from that date. *Brooks v. City of Chi.*, 564 F.3d 830, 832 (7th Cir. 2009). Here, Plaintiff was arrested on August 17, 2011, meaning she had to file her complaint by August 17, 2013 to satisfy the statute of limitations. [1] at 40-46. Her Complaint was not filed until May 12, 2014, which is well outside the statute of limitations. Count I is therefore dismissed with prejudice.

Second, with regard to Plaintiff's state law false arrest claim, the statute of limitations under Illinois law is one year from the accrual of the cause of action. *See Daniel v. City of Matteson*, No. 09 C 3171, 2010 WL 438387, at *2 (N.D. Ill. Feb. 4, 2010) (citing 745 ILCS 10/8-101). As with its federal counterpart, an Illinois state law cause of action for false arrest accrues on the day of arrest. *Id*. Plaintiff was arrested on August 17, 2011, but did not file her Complaint until May 12, 2014, more than two years later. [1] at 40-46. Count V is therefore dismissed with prejudice.

### b. Counts II and III

In Count II, Plaintiff alleges a claim for defamation, and in Count III she alleges a claim for false light invasion of privacy. Both counts allege a cause of action based on the publication of information about Plaintiff's arrest in local newspapers and on the internet. *Id*. at ¶¶ 59, 83. Additionally, Plaintiff alleges: (1) defamation based on Defendants' publication of false police reports, false statements and the false application for arrest to others within the EPD and City of

Elgin; and (2) false light invasion of privacy based on the police coming to her house several times. The Court will address each set of factual allegations in turn.

With regard to the publication of information in print and on the web, the Plaintiff lacks the ability to pursue those claims against the Defendants. Even as alleged, the Defendants argue that, because the undisputed facts show that none of them actually published the information about Plaintiff's arrest, the Plaintiff has failed to allege misconduct sufficient to support her claim. The Court agrees. In order to maintain this claim, Plaintiff's injury must be "fairly traceable" to the Defendants' conduct. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014). Intervening acts of a third-party, however, may break the causal connection between the injury and the allegedly illegal action. *DH2, Inc. v. U.S. S.E.C.*, 422 F.3d 591, 597 (7th Cir. 2005); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976) ("the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court"). Plaintiff's allegations relating to print and online publication fail for this very reason. The decision to publish information regarding Plaintiff's arrest was made not by the Defendants, but by independent third party newspaper and/or internet operators. Plaintiff has pled no facts showing that any of the Defendants published the allegedly defamatory material, nor has she pled facts showing that the Defendants aided or encouraged others in publishing that material. Plaintiff's sole argument to

the contrary, that the Defendants knew arrest reports were public knowledge, does not support a finding that the Plaintiff's injury was fairly traceable to the Defendants, because an independent third party actually published the information. As such, to the extent Counts II and III are based on the print or online publication of information concerning Plaintiff's arrest, Plaintiff cannot assert those claims and they are dismissed.

Plaintiff's remaining allegations in Counts II and III are time barred. The statute of limitations for defamation and false light invasion of privacy is one year from the date when the cause of action accrued. *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 841 (N.D. Ill. 2015) (citing 735 ILCS 5/13–201). Under Illinois law, a cause of action for defamation accrues on the date the defamatory material is published. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 932 N.E.2d 448, 459 (Ill. App. Ct. 2010). After addressing the print and online publications concerning Plaintiff, the only remaining defamatory statements at issue are the false police reports, false statements and false application for a warrant. All of these statements were made before September 2011. [1] at ¶¶ 29-40. But Plaintiff did not bring suit until May 12, 2014, more than two years later. Plaintiff's remaining claims for defamation are thus dismissed as time barred.

The date of accrual for a false light invasion of privacy claim is not specifically set out in Illinois law. Nevertheless, Illinois law teaches generally that a cause of action accrues when the action may first be instituted. *Pfeifer v. Bell & Howell Co.*, 368 N.E.2d 520, 521 (Ill. App. Ct. 1977); *Flowers v. Carbondale*

*Elementary Sch. Dist. No. 95*, No. CIV. 09-827-GPM, 2010 WL 3942447, at *5 (S.D. Ill. Oct. 6, 2010). Here, as alleged, Plaintiff's false light claim is based upon the officers visiting her house, and that claim accrued by August 2011 at the latest. [1] at ¶¶ 35-40. That is the last time the officers visited Plaintiff's home. Because the Complaint was filed on May 12, 2014, more than one year after the officers visited her house, Plaintiff's claim is dismissed as time barred.

### c. Count IV

In Count IV, Plaintiff alleges a claim for intentional infliction of emotional distress ("IIED"). Defendants argue that Plaintiff has not adequately pled the elements of that claim. The elements for a claim of IIED are: "(1) the defendant engaged in extreme and outrageous conduct toward the plaintiff; (2) the defendant intended or recklessly disregarded the probability that the conduct would cause the plaintiff to suffer emotional distress; (3) the plaintiff endured severe or extreme emotional distress; and (4) the defendant's conduct actually and proximately caused the plaintiff's distress." *Ulm v. Memorial Medical Center*, 964 N.E.2d 632 (Ill. App. Ct. 2012). Liability may be found only when a defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Hayes v. Illinois Power Co.*, 587 N.E.2d 559, 563 (Ill. App. Ct. 1992). When an IIED claim arises from abuse of police power, "there must be allegations of more than a misuse of police authority to support a claim of extreme and outrageous behavior." *Carr v. Vill. of Richmond*, No. 96 C 50203, 1996 WL 663921, at *8 (N.D. Ill. Nov. 15, 1996) (holding that the defendant's conduct in

arresting the plaintiff – holding her up against a wall, slamming her into the squad car, and throwing her into the squad car by her pony tail – was not sufficient to show IIED); *Nugent v. Hayes*, 88 F. Supp. 2d 862, 869 (N.D. Ill. 2000) (holding that plaintiff's allegations that defendants wrongfully framed and prosecuted him for murder was not outrageous conduct for the purposes of a IIED claim).

Plaintiff has failed to adequately plead IIED in Count IV, as she merely lists legal conclusions and recites the elements of the cause of action. Even if Plaintiff's IIED claim is the result of the Defendants' allegedly unlawful pursuit of criminal charges against Plaintiff (*i.e.*, writing and approving the police reports, swearing to the arrest warrant and prosecuting the Plaintiff), Plaintiff's claim merely alleges that the Defendants misused their police power. Such allegations, standing alone, are not actionable as an IIED claim. *Carr*, 1996 WL 663921 at 8.

As to the ECC Defendants, Plaintiff at most has alleged that they failed Plaintiff in one course, revoked her access to D2L, investigated her complaint of harassment against Lalley, and filled out false reports. None of these actions come close to the "extreme and outrageous" conduct needed to sustain a claim for emotional distress. *See, e.g., Doe v. Calumet City*, 161 Ill. 2d 374, 392 (1994) (explaining that conduct is considered extreme and outrageous only where "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"); *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1109 (Ill. App. Ct. 1991) (affirming dismissal of IIED claim where employer filed false police report against plaintiff).

In light of the foregoing, Plaintiff's IIED claim is dismissed with prejudice because she has failed to allege facts showing "extreme and outrageous" conduct.

### d. Counts VIII, XI and XII

Plaintiff's claims in Counts VIII (free speech), XI (equal protection) and XII (due process) are untimely.[2]  Plaintiff brought all of these claims under 42 U.S.C. §1983.  Claims filed under Section 1983 do not have an express statute of limitations, so the Court looks to the forum state's established statute of limitations for personal injury actions to determine the relevant limitations period.  *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998).  "In Illinois, the statute of limitations for §1983 claims is two years."  *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008).  Federal law determines when a Section 1983 claim accrues.  *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).  Those types of claims accrue when the plaintiff knows or should know that her constitutional rights have been violated.  *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005).  This determination requires two steps: (1) the court must identify the injury; and (2) it must decide the date when the plaintiff could have sued for that injury because she knew or should have known of the injury.  *Id*.  To determine when each cause of action accrued, the Court must first analyze their elements.

---

[2] Although the parties have not addressed the statute of limitations argument with regard to Counts XI and XII, this Court can invoke an affirmative defense, such as the statute of limitations, *sua sponte* if the defense is apparent from the complaint.  *Best v. City of Portland*, 554 F.3d 698, 700 (7th Cir. 2009); *King v. One Unknown Federal Correctional Officer*, 201 F.3d 910 (7th Cir. 2000) (affirming dismissal where district court raised limitations defense sua sponte).

### i. Count VIII

As a general matter, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To make out a *prima facie* case, Plaintiff must allege that: (1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). For purposes of this Court's statute of limitation analysis, then, this Court must determine: (1) the deprivation suffered by Plaintiff; and (2) when Plaintiff could have sued because she knew or should have known that she suffered that deprivation.

In Count VIII, Plaintiff alleges that Defendants retaliated against her in violation of the First Amendment by: (1) asking to meet with her; (2) coming to one of her classes; (3) investigating her; (4) looking at her school records; (5) deleting her comments on D2L; (6) asking her not to voice her opposition to discussions; (7) terminating her ability to participate in class discussions; (8) filing false reports about her; (9) arresting her; and (10) prosecuting her. [1] at ¶¶ 13-56. These ten actions, then, are Plaintiff's purported injuries.

The next issue is when Plaintiff knew or should have known that she suffered these injuries such that she could have initiated a lawsuit. Based upon the FAC, Plaintiff knew or should have known about actions 1-7 and 9 on or before August

17, 2011 – the date she was arrested. *Id*. With regard to deprivations 8 (false statements) and 10 (prosecution), Plaintiff knew, or should have known, about those actions by either: (1) August 17, 2011 when she went to the Kane County Clerk and filed a motion to quash her subpoena, *id. at* ¶ 40; or (2) September 1, 2011, when she began receiving plea offers from the state. *Id*. at ¶ 55. Thus, Plaintiff knew of her First Amendment injuries on September 1, 2011 at the latest. Despite this, Plaintiff did not file the Complaint until May 12, 2014, [1], over two years after the events giving rise to her First Amendment claim. Count VIII is therefore dismissed as time barred.

### ii. Count XI

In Count XI, Plaintiff alleges a "class of one" equal protection violation. For a "class of one" claim, Plaintiff must plead that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. Kopp*, 725 F.3d 681, 685-86 (7th Cir. 2013) (internal citations and quotations omitted). Without much specificity, Plaintiff alleges that the entire course of Defendants' conduct here constituted an equal protection violation. [1] at ¶¶ 133-142. This includes investigating Plaintiff's conduct at ECC, filing allegedly false statements, arresting Plaintiff and prosecuting her. Temporally, the last act of misconduct was Defendants' allegedly improper prosecution of Plaintiff. *Id*. at ¶¶ 38-56. As explained above, Plaintiff knew or should have known that her rights were allegedly violated when the prosecution was commenced and she was offered a plea deal – September 1, 2011 at

the latest.  *Id.* at ¶ 55.  That date falls outside of the two year statute of limitations, and Count XI is thus dismissed as time barred.

### iii.  Count XII

In Count XII, Plaintiff alleges a claim for deprivation of her due process rights.  To state a due process claim, Plaintiff must allege:  "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation."  *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008).  However, in Illinois there is no "due process" cause of action available for malicious prosecution.  *Saunders-El v. Rohde*, 778 F.3d 556, 560 (7th Cir. 2015), *reh'g denied* (Feb. 26, 2015).  Plaintiff's claim for a violation of her due process rights is therefore limited to the other misconduct she alleges – *i.e.*, the investigation, false statements and arrest.  This misconduct was completed by late August 2011, when Plaintiff was arrested.  [1] at ¶¶ 40-45.  There is no later occurring misconduct alleged in the FAC that could constitute a violation of Plaintiff's due process rights.  As such, Plaintiff's cause of action accrued by late August 2011.  Because Plaintiff's complaint was not filed until May 12, 2014, it was not filed within the two year statute of limitations and her due process claim is time barred.  Count XII is dismissed with prejudice.

### e.  Count X

In Count X, Plaintiff alleges a claim for obstruction of justice.  However, there is no civil cause of action for obstruction of justice.  *Jones v. United Airlines*, No. 11 C 6374, 2012 WL 6216741, at *8 (N.D. Ill. Dec. 13, 2012) ("obstruction of justice is a

criminal offense—there is no civil cause of action for obstruction of justice in state tort law"); *Panko v. United States*, No. 86 C 009, 1987 WL 11340, at *1 (N.D. Ill. May 22, 1987) ("We agree with Defendant there is no tort of 'obstruction of justice'"). Count X is therefore dismissed with prejudice.

### f. Count VI

In Count VI, Plaintiff alleges a state-based malicious prosecution claim against all Defendants. In Illinois, the elements of a malicious prosecution claim are: (1) commencement of criminal proceedings by the defendants, (2) termination of that matter in favor of the plaintiff, (3) the absence of probable cause for the proceedings, (4) the presence of malice, and (5) resulting damages. *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013). Defendants claim that Plaintiff has not adequately alleged malicious prosecution for two reasons: (1) the Defendants were not involved in the commencement of criminal proceedings because they did not actually prosecute the Plaintiff; and (2) Plaintiff has not adequately alleged the absence of probable cause.

As to the first argument, there is no requirement that the Defendants actually prosecute the Plaintiff themselves. Instead, the Defendants may be found liable for malicious prosecution if they "played a significant role in causing the prosecution." *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 928 (N.D. Ill. 2013) (citing *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. Ct. 2000)). For instance, in *Starks v. City of Waukegan* the Defendant police officers were sued for malicious prosecution but argued that they could not be held liable

because "police do not prosecute, prosecutors do." 946 F. Supp. 2d 780, 794 (N.D. Ill. 2013), *on reconsideration in part* (Aug. 16, 2013). The court disagreed, finding that liability for "malicious prosecution is not confined to situations where the defendant signed a complaint against the plaintiff. Rather, liability extends to all persons who played a significant role in causing the prosecution of the plaintiff." *Id.* This includes police officers who: (1) file false police reports, *id.*; (2) sign off on false police reports, *Padilla*, 932 F. Supp. 2d at 928; (3) sign criminal complaints containing false information, *id.*; and (4) testify falsely before the grand jury. *Petrovic v. City of Chicago*, No. 06 C 6111, 2008 WL 4286954, at *9 (N.D. Ill. Sept. 16, 2008). It can also include private citizens who make false accusations that result in prosecution. *Allen v. Berger*, 784 N.E.2d 367, 371 (Ill. App. Ct. 2002). The issue before this Court, therefore, is whether Plaintiff has adequately alleged that each Defendant played a significant role in causing her prosecution. *Padilla*, 932 F. Supp. 2d at 928. In making this determination, the Court will construe Plaintiff's *pro se* First Amended Complaint liberally, as required by Seventh Circuit precedent. *See Arnett*, 658 F.3d at 751.

The Court will address each individual Defendant in turn. With regard to Defendant Lalley, Plaintiff alleges that Lalley undertook a "vindictive and relentless campaign" against her by: (1) removing her posts from D2L, [1] at ¶ 15; (2) naming Plaintiff as a suspect in a criminal investigation, *id.* at ¶ 15; (3) having Plaintiff arrested and over zealously prosecuted, *id.* at ¶¶ 15, 30; and (4) assisting with the investigation by identifying Plaintiff for Defendant Remljak. *Id.* Plaintiff

also alleges facts that, construing the FAC liberally and drawing all inferences in Plaintiff's favor, show that Defendant Lalley helped commence the electronic harassment investigation and prosecution. The allegedly harassing email at issue was sent to Lalley from chernoffjosh@aol.com. [1] at ¶ 30. Lalley informed Defendant Senne that Plaintiff was the only person suspected of sending that email. *Id.* at ¶ 30. Defendant Senne later wrote and swore to the criminal complaint against the Plaintiff. *Id.* at ¶ 38. Plaintiff alleges that the information provided by Senne to obtain the criminal complaint, which presumably included Lalley's identification of Plaintiff as the suspect, was false. At this stage of the proceedings, this is sufficient to allege that Defendant Lalley played a significant role in causing Plaintiff's prosecution.

With regard to Defendants Ramljak, Senne and Danner, Plaintiff alleges that each created, or signed off on, false statements that ultimately led to her prosecution. Plaintiff claims that Defendant Ramljak wrote a false report on May 7, 2011 about Plaintiff's actions. *Id.* at ¶ 29. Defendant Danner signed off on this report. *Id.* This report, however, did not concern the crime for which Plaintiff was eventually charged and prosecuted. *Id.* Ramljak's report described an incident of disorderly conduct where an interoffice envelope was left in his ECC mailbox. *Id.* Importantly, the report listed the suspect as unknown. *Id.* The FAC does not include any indication that this report played any role in Plaintiff's prosecution. Thus, Plaintiff has not adequately alleged that Defendant Ramljak played a

significant role in causing her prosecution. Count VI is dismissed with regard to Defendant Ramljak.

As to Defendant Senne, Plaintiff claims that he wrote a supplemental report concerning the Plaintiff on May 25, 2011. [1] at ¶ 30. That report alleged electronic communication harassment against Plaintiff based on an email sent to Defendant Lalley. *Id*. Defendant Danner approved the May 25, 2011 report. *Id*. A few months later, Defendant Senne signed and swore to a criminal complaint against the Plaintiff alleging one count of electronic communication harassment; he also obtained a warrant for Plaintiff's arrest. *Id*. at ¶ 38. Plaintiff alleges that the reports and/or statements created or approved by Defendants Senne and Danner were false and intended to cause Plaintiff's arrest and prosecution. *Id*. at ¶¶ 57-58. At this stage of the proceedings, this is sufficient to allege that those Defendants played "a significant role" in causing Plaintiff's prosecution.

As for Defendant Prentice, Plaintiff's sole allegations are that she: (1) provided the other Defendants with Plaintiff's records and personal information; and (2) did a poor job completing the ECC investigation into Plaintiff's complaint against Lalley. Plaintiff has alleged no facts tying Prentice's alleged conduct to her eventual prosecution. The allegations against Defendant Prentice are therefore insufficient to show that she had a significant role in causing Plaintiff's prosecution. Count VI is dismissed as to Defendant Prentice.

Defendants' second argument against Plaintiff's malicious prosecution claim is that Plaintiff has failed to allege a lack of probable cause. The probable cause

inquiry is an objective one. *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010). Probable cause requires only a probability or substantial chance of criminal activity; the evidence need not show that the officer's belief was more likely true than false. *Purvis v. Oest*, 614 F.3d 713, 722-23 (7th Cir. 2010). "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010). A court evaluates probable cause not with the benefit of hindsight, "but on the facts as they appeared to a reasonable person in the defendant's position, even if that reasonable belief turned out to be incorrect." *Id*. The question for this Court, therefore, is whether the Defendants had probable cause to believe that Plaintiff committed the crime of electronic communication harassment.

Here, Plaintiff alleges generally that the Defendants knew she was innocent when she was arrested, [1] at ¶¶ 76-77, and that the criminal prosecution was commenced without probable cause. *Id*. at ¶ 112. More specifically, she claims that all of the reports and/or statements authored or signed off on by the Defendants were false, and that those reports and statements were eventually used to charge her with the crime of electronic communication harassment. It stands to reason that these reports detailed the allegations constituting that crime. If all of those allegations were false, Defendants could not have had probable cause to arrest and

prosecute the Plaintiff.  Further, there are no facts affirmatively alleged in the FAC that demonstrate the presence of probable cause.  In other words, there are no facts showing that Plaintiff committed the two elements of the crime alleged: (1) sending an email to Lalley; and (2) doing so with the intent to harass Lalley.  *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 909 (N.D. Ill. 2010).  As such, the Court finds that Plaintiff has adequately alleged a lack of probable cause at this point in the proceedings, and Defendants' motion to dismiss Count VI is denied with regard to Defendants Lalley, Senne and Danner.

Because this Court allows Plaintiff to proceed on her malicious prosecution claim against employees of both ECC and the City of Elgin, Defendants' motion to dismiss Count VI with regard to the City of Elgin and ECC is denied.  Plaintiff has adequately alleged that the individual Defendants acted in the course and scope of their employment, and therefore has adequately stated claims for the vicarious liability of the City and ECC.

### g.  Count VII

In Count VII, Plaintiff claims that ECC and the City of Elgin are liable for the actions of their employees under a theory of respondeat superior.  All the causes of action at issue here will be dismissed except for Plaintiff's malicious prosecution claim in Count VI.  Because Count VI is alleged against ECC and the City of Elgin based upon the actions of their employees, there is no need for a separate count (Count VII) alleging a general theory of respondeat superior.  Count VII is therefore dismissed as redundant, and Count VI will proceed against: (1) the individual

Defendants; and (2) the entity Defendants on a theory of vicarious liability. *See Gibson v. City of Chicago*, No. 13 C 03273, 2013 WL 6698164, at *3 (N.D. Ill. Dec. 17, 2013) (dismissing redundant claims based on respondeat superior liability).

### h. Count IX

In Count IX, Plaintiff alleges a claim for indemnification by the City of Elgin and/or ECC for the misconduct of their employees. Defendants argue that the indemnification claim should be dismissed because all of the underlying causes of action will be dismissed. Because Plaintiff will be allowed to proceed on Count VI, that argument is unavailing. The motion to dismiss Count IX is denied.

## IV. Conclusion

Defendants' motions to dismiss, [51], [70], are granted in part and denied in part as follows:

(1)     Count I is dismissed with prejudice;

(2)     Count II is dismissed with prejudice to the extent it is based upon the police officers appearing at Plaintiff's house, but it is dismissed without prejudice to the extent it is based upon print and online publication;

(3)     Count III is dismissed with prejudice to the extent it is based upon the publication of police reports to the EPD or City of Elgin, but it is dismissed without prejudice to the extent it is based upon print and online publication;[3]

---

[3] The parts of Counts II and III that are dismissed without prejudice are dismissed in that manner because Plaintiff lacked standing to pursue those parts of Counts II and III. *Am. Bottom Conservancy v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 660 (7th Cir. 2011) (where a district court

(4)      Count IV is dismissed with prejudice;

(5)      Count V is dismissed with prejudice;

(6)      Count VI is dismissed with prejudice as to Defendants Ramljak and Prentice, but remains pending against Defendants Lalley, Senne, Danner, ECC and the City of Elgin;

(7)      Count VII is dismissed with prejudice;

(8)      Count VIII is dismissed with prejudice;

(9)      Defendants' motion to dismiss Count IX is denied;

(10)    Count X is dismissed with prejudice;

(11)    Count XI is dismissed with prejudice; and

(12)    Count XII is dismissed with prejudice.

This matter remains set for a status hearing on 3/3/16.

IT IS SO ORDERED

Dated:  February 9, 2016

                    J

United States District Court

---

dismisses a suit for lack of standing, "it had no jurisdiction [and] therefore could only dismiss without prejudice").